IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:17-CV-00314-GCM

| | |
|---|---|
| VIPER PUBLISHING, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| HOWARD BAILEY, Jr. | ) |
| *p/k/a Chingy*, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| v. | ) |
| | ) |
| LESLIE CHARLES KING II, | ) |
| | ) |
| Third Party Defendant | ) |
| | ) |

**THIS MATTER** is before the Court on the Motion to Dismiss Defendant's Amended Counterclaims and Third Party Complaint and to Strike Affirmative Defenses filed by Plaintiff and Third Party Defendant (Doc. No. 38). For the following reasons, this Motion is granted in part, denied in part.

## I. BACKGROUND

Plaintiff Viper Publishing, LLC ("Viper"), is a Nevada limited liability company with its principal place of business in North Carolina. Viper is a digital entertainment company. Defendant Howard Bailey, Jr. ("Bailey"), is a musical recording artist and performer who is professionally known as "Chingy." The sole owner of Viper is Third Party Defendant Leslie Charles King II ("King"). King is a licensed attorney in North Carolina, and King provided "management services" to Bailey pursuant to an oral agreement (the "Management Agreement") from 2007 through 2012.

1

Viper filed a Complaint on June 9, 2017, alleging that Viper and Bailey entered into a "Purchase Agreement" on April 25, 2014. Under the Purchase Agreement, Viper allegedly acquired (among other things) all of Bailey's right, title, and interest to any digital performance royalties for the transmission and reproduction of sound recordings by Bailey. Viper's Complaint claims that Bailey breached the Purchase Agreement and seeks relief in the form of liquidated damages, attorney's fees and costs, and a declaratory judgment. Viper properly served its Complaint on Bailey on or before August 21, 2017. When Bailey did not timely answer, Viper moved for and received an entry of default, and then subsequently moved for a default judgment. Bailey then made an appearance through counsel and moved to set aside the entry of default, which this Court granted. Bailey also moved to dismiss Viper's claims for lack of personal jurisdiction. This Court denied that motion on December 14, 2017.

Subsequently, Bailey filed an Answer, Third Party Complaint against King, and a Counterclaim against Viper. On February 2, 2018, Bailey filed an Amended Answer, Third Party Complaint, and Counterclaim. Bailey asserts three causes of action: (1) a conversion claim against Viper and King; (2) a constructive fraud claim against Viper and King; and (3) a North Carolina Unfair and Deceptive Trade Practices Act (UDTPA) claim against Viper and King. Bailey also raises four affirmative defenses: (1) that the Purchase Agreement was obtained in violation of Rule 1.8 of the Rules of Professional Conduct of the North Carolina State Bar and is therefore void as a matter of public policy; (2) that the Purchase Agreement is unenforceable due to indefiniteness because it fails to specify all material terms; (3) that the Purchase Agreement is unenforceable under the doctrine of unconscionability; and (4) that the liquidated damages provision contained in the Purchase Agreement is void as an unenforceable penalty.

In support of these claims and affirmative defenses, Bailey alleges that he "became a client of King's in late 2007 when King became [his] business manager," and that he specifically

trusted King because "King held himself out as a licensed attorney." (Am. Countercl., 9). As Bailey's business manager, King both reviewed contracts for Defendant and provided Defendant with advice regarding the execution of contracts. Bailey terminated King as his business manager in 2012. Nonetheless, Bailey alleges that King continued to give Bailey advice from "time to time." (Am. Countercl., 9–10).

In January 2014, Bailey contacted King to obtain assistance raising financing for a new single, and King agreed to assist in this process. When those efforts failed, King offered to provide the necessary financing. Bailey claims that prior to the execution of the Purchase Agreement, King told Bailey that the agreement was an advance for only one song, not for all of Bailey's future royalties. Bailey claims that he "trusted King" based on his "relationship with King" and based on "the fact that King had agreed to assist him with obtaining financing for a new single." (Am. Countercl., 10). Bailey alleges that it was "never explained" to him that he was assigning all of his future royalties to Viper and that he had no intention of doing so. (*Id.*).

Bailey claims that he was not represented by counsel when he negotiated and signed the Purchase Agreement and that King never informed him that he should obtain separate legal advice. Further, Bailey claims that King knew Bailey "lacked the necessary skills and knowledge to negotiate the agreements at issue without the assistance of counsel." (*Id.*). Prior to April 2017, Bailey discovered that Viper and King had been collecting royalties on all of his recordings since 2012, even before the Purchase Agreement was signed. As a result, Bailey changed the bank account information applicable to the recordings in order to route royalty payments to himself, instead of to Viper. That action prompted Viper to initiate this suit.

Viper has filed a motion to dismiss all three of Bailey's causes of action and to strike Bailey's first three affirmative defenses.

## II. MOTION TO DISMISS

### A. Standard of Review

When faced with a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept as true all well-pleaded allegations and . . . view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court "assume[s] the veracity" of these factual allegations, and "determine[s] whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000). Thus, to survive a motion to dismiss, the plaintiff must include within his complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### B. Conversion

Bailey's first cause of action is a claim for conversion. A claim for conversion requires two elements: "(1) ownership of a thing vested in the plaintiff and, (2) a wrongful conversion of the thing by the defendant." *Flexible Foam Prods., Inc. v. Vitafoam Inc.*, 980 F. Supp. 2d 690, 700 (W.D.N.C. 2013). Bailey alleges that the conversion was ongoing between 2012 and April 2017, as King wrongfully diverted royalties that properly belonged to Bailey.

King and Viper argue that Bailey's claim for conversion based on funds received by Viper prior to December 27, 2013, is time-barred by the applicable statute of limitations. Bailey concedes this argument in his response in opposition to the motion to dismiss. While a court assessing a motion to dismiss under Rule 12(b)(6) generally "cannot reach the merits of an affirmative defense," it may determine the merits at this stage of the litigation if "all facts

necessary to the affirmative defense clearly appear[] on the face of the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). Here, Bailey's counterclaim plainly provides all of the facts needed to resolve a question of statute of limitations. Under North Carolina law, conversion claims are subject to a three-year statute of limitations that runs from the date of the alleged wrongful conduct. *Sayman v. Lehman Bros. FSB*, No. 3:13-cv-288, 2014 WL 868711, at *3 (W.D.N.C. Mar. 5, 2014) (citing N.C. Gen. Stat. § 1-52(4)). Bailey filed his conversion claim on December 27, 2017. Accordingly, Bailey's claim for conversion of funds prior to December 27, 2014, is time-barred.

Bailey argues that his claim for conversion of funds after December 27, 2014, however, should survive because he has alleged that the Purchase Agreement is void as against public policy. Bailey argues that King violated Rule 1.8 of the Rules of Professional Conduct of the North Carolina State Bar in negotiating the Purchase Agreement with Bailey, and that therefore the money was not taken pursuant to a valid contract. Rule 1.8 governs conflicts of interest between lawyers and current clients, and it states, in relevant part,

> A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest directly adverse to a client unless: (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client; (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

N.C. R. Prof. Conduct 1.8(a). A "client may elect to void a contract when the [Rule 1.8] requirements have not been met" and may use it to "defend" against claims asserted by the attorney against the client under the contract. *Law Offices of Peter H. Priest, PLLC v. Coch*, No.

12 CVS 3532, 2014 WL 5780815, at *8 (N.C. Super. Ct., Nov. 5, 2014), *aff'd* 780 S.E.2d 163, 172 ("We have no trouble concluding that the trial court did not err in its determination that an attorney's violation of Rule 1.8(a) can be used defensively against him.").

Bailey does not cite any cases supporting his argument that once a contract is voided as a result of a Rule 1.8(a) violation, the client may then institute a conversion claim against his attorney for all proceeds received pursuant to the voided agreement. Nonetheless, the Court does not need to decide if such a cause of action is available, as Bailey has failed to allege sufficient facts supporting a Rule 1.8(a) violation in the first place.

In order to allege a Rule 1.8(a) violation, Bailey must first allege that there was an attorney-client relationship between himself and King at the time the parties entered into the Purchase Agreement. "In North Carolina, 'the relation of attorney and client may be implied from the conduct of the parties, and is not dependent on the payment of a fee, nor upon the execution of a formal contract.'" *Stillwagon v. Innsbrook Golf & Marina, LLC*, No. 2:13-cv-18-D, 2014 WL 4272766 (E.D.N.C. Aug. 29, 2014) (quoting *N.C. State Bar v. Sheffield*, 326 S.E.2d 320, 325 (N.C. Ct. App. 1985)). Rather, the dispositive question is whether the attorney's "conduct was such that an attorney-client relationship could reasonably be inferred." *Sheffield*, 326 S.E.2d at 325.

Defendant's allegations lack specificity and are too conclusory for a court to find that an attorney-client relationship existed at the time the Purchase Agreement was signed. The only allegation describing any type of *current* relationship between Bailey and King consists of the statement that King provided "advice" and "assistance" from "time to time" to Bailey. Bailey does not describe the type of advice or assistance provided by King, nor does he even allege that the advice and assistance was legal in nature. This vagueness is even more striking when

compared to the detail in which Bailey describes King's previous duties as Bailey's business manager. Bailey alleges that, as his business manager, King both reviewed contracts for Bailey and provided him with advice regarding the execution of contracts. However, by Bailey's own admission, Bailey terminated this relationship in 2012. At the time the Purchase Agreement was negotiated and signed, Bailey alleges only that he asked King to help him secure financing, and that when those efforts were unsuccessful, King offered to finance the project. Neither of these actions would lead a person in Bailey's position to reasonably believe that he and King shared an attorney-client relationship. Thus, Bailey has not stated sufficient facts to allege that there was an attorney-client relationship at the time the Purchase Agreement was negotiated and signed.

Accordingly, Bailey fails to allege that the contract is void, and thus his conversion claim against Viper and King for all money received after December 27, 2014, must also be dismissed.

### C. Constructive Fraud

Bailey's second claim is for constructive fraud. To plead a claim for constructive fraud, a party must show "(1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured." *Olympus Managed Health Care, Inc. v. Am. Housecall Physicians, Inc.*, 662 F. Supp. 2d 427, 439 (W.D.N.C. 2009) (quoting *Clay v. Monroe*, 658 S.E.2d 532, 536 (N.C. Ct. App. 2008)); *see also Stilwell v. Walden,* 320 S.E.2d 329, 331 (N.C. Ct. App. 1984) ("a case of constructive fraud is established when proof is presented that a position of trust and confidence was taken advantage of to the hurt of the other.").

Bailey relies on his alleged attorney-client relationship in order to sustain his constructive fraud claim. As discussed above, Bailey's pleadings are insufficient to show that an attorney-client relationship existed at the time the parties negotiated and signed the Purchase Agreement.

7

However, that does not necessarily mean he has not alleged a relationship of trust and confidence between himself and King. *See Abbitt v. Gregory*, 160 S.E. 896, 906 (N.C. 1931) (holding that such relationships extend beyond clearly-defined "legal relations"). Bailey has alleged both a previous formal business relationship and an ongoing informal relationship with King in which he frequently relied on King's advice and assistance with individual projects. Bailey further alleges that King knew Bailey lacked the "necessary skills and knowledge" to negotiate an agreement and used his relationship to lead Bailey to believe that the Purchase Agreement was an advance for only one song. These allegations amount to "dependence and confidence on the one hand and influence on the other," such that Bailey has sufficiently alleged a claim for constructive fraud. *See Stilwell*, 320 S.E.2d at 547.

Accordingly, King and Viper's motion to dismiss Baily's constructive fraud claim is denied.

### D. Unfair and Deceptive Trade Practices

Bailey next alleges that King and Viper violated the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75–1.1, *et. seq*. "To state a claim under the UDTPA, [a] plaintiff must show (1) an unfair or deceptive act or practice (2) in or affecting commerce (3) which proximately caused actual injury to the plaintiff or to his business." *Kelly v. Georgia-Pacific LLC*, 671 F. Supp. 2d 785, 798 (E.D.N.C. 2009).

The majority of federal courts within North Carolina hold that a plaintiff must have suffered an injury in North Carolina in order to have a claim under N.C. Gen. Stat. § 75-1.1. *See The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 501-02 (M.D.N.C. 1987) ("75-1.1 applies only if the plaintiff alleges an in-state, injurious effect on his business operations in North Carolina"); *see also Dixie Yarns v. Plantation Kilts*, No. 3:93CV301-P, 1994 WL

910955, *2 (W.D.N.C. 1994) ("First, the claim must involve 'an in-state injurious effect on [plaintiff's] business operations in North Carolina.' Second, a § 75-1.1 claim must implicate an effect that is 'substantial . . . on a plaintiff's in-state business . . . .'" (quoting *Porters*, 633 F. Supp. at 501-02)); *see also US LEC Commc'ns, Inc. v. Qwest Commc'ns Corp.*, No. 3:05-CV-00011, 2006 WL 1367383, at *3 (W.D.N.C. 2006) ("The claim must involve an in-state injurious effect on [plaintiff's] business operations in North Carolina, and the claim must implicate an effect that is substantial . . . on a plaintiff's in-state business." (internal citations omitted)).

Bailey has not alleged any in-state injurious effect to his business operations in North Carolina. Accordingly, the UDTPA claim must be dismissed.

### III. MOTION TO STRIKE

#### A. Standard of Review

Rule 12(f) of the Federal Rules of Civil Procedure states, in relevant part, that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant as a dilatory tactic.'" *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (citation omitted). The decision whether to strike an affirmative defense is discretionary, and "courts generally refrain from striking affirmative defenses absent a showing that not doing so would unfairly prejudice the movant." *Lockheed Martin Corp. v. United States*, 973 F. Supp. 2d 591, 592 (D. Md. 2013).

Rule 8(b)(1) requires a party responding to a pleading to "state in short and plain terms its defenses to each claim asserted against it" and "admit or deny the allegations asserted against it." A party responding to a pleading must also "affirmatively state any avoidance or affirmative

defense." Fed. R. Civ. P. 8(c). The plausibility standard of *Twombly* and *Iqbal* does not apply to affirmative defenses. *See LBCMT 2007-C3 Urbana Pike, LLC v. Sheppard*, 302 F.R.D. 385, 387 (D. Md. 2014). Rather, a court should only strike "a defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action." *Waste Mgmt.*, 252 F.3d at 347 (quoting 5A A. Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1006 (2d ed. 1990)).

### B. Rule 1.8 of the Rules of Professional Conduct of the North Carolina State Bar

Bailey's first affirmative defense is that the Purchase Agreement is void because King violated Rule 1.8. While Bailey has not pled sufficient facts to show that King and Bailey had an attorney-client relationship for purposes of asserting a claim for relief against King and Viper, Bailey does not need to plead an affirmative defenses with the same level of specificity. Rather, in light of the allegations contained in the Complaint, it is clear that such a violation, if proven, would qualify as a valid defense to Viper's breach of contract claims. *See Law Offices of Peter H. Priest, PLLC*, 780 S.E.2d at 172 ("We have no trouble concluding that the trial court did not err in its determination that an attorney's violation of Rule 1.8(a) can be used defensively against him.").

Further, Viper and King have not demonstrated that any unfair prejudice would result from allowing this affirmative defense to stand at this stage of the litigation. Thus, the Court will not exercise its discretion to strike the Rule 1.8 affirmative defense at this time.

### C. Unenforceable Due to Indefiniteness

Bailey's next affirmative defense is that the Purchase Agreement is unenforceable due to indefiniteness because it "fails to specify all material terms." Under North Carolina law, any contract or provision that fails to "specify either directly or by implication a material term is invalid as a matter of law." *MCB Ltd. v. McGowan*, 359 S.E.2d 50, 51 (N.C. Ct. App. 1987). Such a contract or

provision that leaves "material portions open for future agreement is nugatory and void for indefiniteness." *Id.* (quoting *Boyce v. McMahan*, 208 S.E.2d 692, 695 (N.C. Ct. App. 1974)). Thus, Bailey's affirmative defense could, if proven, serve as a valid defense to Viper's breach of contract claims.

Additionally, as above, Viper and King have not shown any unfair prejudice that would result from a denial of their motion to strike this affirmative defense. Accordingly, the Court will not exercise its discretion to strike the indefiniteness affirmative defense at this time.

### D. Unenforceable Due to Unconscionability

Bailey's third affirmative defense is that the Purchase Agreement is unenforceable under the doctrine of unconscionability. An agreement that is unconscionable is unenforceable. *King v. King*, 442 S.E.2d 154, 157. Proof of unconscionability requires both a procedural element—"bargaining naughtiness in the formation of the contract"—and a substantive element—"harsh, oppressive, and one-sided terms of a contract." *Id.* (quoting *Rite Color Chem. Co. v. Velvet Textile Co.*, 411 S.E.2d 645, 648 (N.C. Ct. App. 1992)). While Bailey's allegations are insufficient to create a plausible claim for relief, they do put Viper and King on notice of the procedural and substantive issues Bailey has with the Purchase Agreement. Thus, as above, Bailey's affirmative defense could serve as a valid defense to the allegations in the Complaint if he is able to prove unconscionability.

Further, Viper and King have not shown any unfair prejudice that would result from a denial of their motion to strike this affirmative defense. Thus, the Court will not exercise its discretion to strike the unconscionability affirmative defense at this time.

## IV. CONCLUSION

For the foregoing reasons the Court hereby **ORDERS** that the Motion to Dismiss Defendant's Amended Counterclaims and Third Party Complaint and to Strike Affirmative Defenses (Doc. No. 38) is **GRANTED IN PART, DENIED IN PART.**

The following counterclaims and third party claims asserted by Defendant Bailey are **DISMISSED WITHOUT PREJUDICE**:

1. The claim of conversion against Viper and King; and

2. The claim of unfair and deceptive trade practices against Viper and King.

**SO ORDERED.**

Signed: June 25, 2018

Graham C. Mullen
United States District Judge